EDGAR B. GARDNER v. THE DETROIT STREET RAILWAY COMPANY.

*Negligence—Injury to passenger on street car—Evidence—Pleading—Burden of proof—Instructions to jury.*

1. Where, in a personal injury case against a street railway company, the declaration charges that the driver recklessly and negligently allowed the horses attached to the car to be started suddenly forward while the plaintiff was in the act of alighting, thereby causing plaintiff to be thrown from the car and injured, evidence that the driver, who had been driving rapidly between switches, stated that he was behind time, and wanted to go on, and that the conductor said not to do so, but to wait until the other car came up, is not a part of the *res gestæ*, and has no legitimate tendency to prove the negligence alleged.

2. It was competent for the plaintiff to show his physical condition just prior to the accident for the purpose of showing his ability to earn a living, and the amount of damage sustained by the injury.

3. Where it is sought to charge a street railway company in a personal injury case with the violation of a duty imposed upon it by ordinance, the ordinance must be pleaded; citing *Richter v. Harper*, 95 Mich. 221, 227.

4. It was confessedly erroneous to instruct the jury, at the request of the plaintiff, that "if the car stopped to allow passengers to alight, and while plaintiff, being a passenger, and using reasonable care, was in the act of alighting therefrom, the car was started with a sudden and violent jerk, then the burden is on the defendant to show to the satisfaction of the jury that

its driver in charge of the car was not guilty of negligence or want of care in the management of the car," which error was not cured by the modification of the request by adding that " it is incumbent on the plaintiff, and the burden is upon him, to show, in the first place, the negligence of the driver."

Error to Wayne. (Gartner, J.) Argued January 3, 1894. Decided February 27, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Sidney T. Miller* (*John C. Donnelly*, of counsel), for appellant.

*Edward W. Pendleton*, for plaintiff.

Long, J. Plaintiff took passage on one of defendant's open cars on the Cass and Third Avenue line, to go to the corner of Fourth avenue and Holden road, a distance of about one and a half miles. He sat near the rear end of the car. The conductor was notified to stop at that point by another passenger, and the conductor repeated the instructions to the driver to stop there. The car was behind time, and was driven rapidly between the switches. At defendant's barns the conductor left the car, which went forward to its destination under the control of the driver. Arriving at the corner of Fourth avenue and Holden road, two ladies arose to leave the car, and the plaintiff arose also, being seen by the driver, it is claimed, and waited for them to alight after the car stopped, after which he stepped to the footboard and attempted to get off, when the car started up and threw him to the ground, causing severe, and, as claimed, permanent, injuries. For these injuries, which it is claimed were caused by the carelessness of defendant's agent, this action is brought. On the trial before a jury, plaintiff had verdict and judgment.

The duty of the defendant and its negligence, as stated in the declaration, is that it was the duty of the defendant to exercise due care for the safety of the plaintiff, and to provide a safe car and competent and trustworthy agents, drivers, and conductors for the safe transportation of the plaintiff, and for his safety while leaving said car; that it was the duty of said conductor and driver to remain on said car from the starting point to the final stopping place; but that, contrary to this duty, the conductor negligently abandoned the car on which plaintiff was riding at defendant's barns, and before reaching its destination, or the place where plaintiff was to alight; that said car stopped to allow plaintiff to alight, and while in the act of so doing, and while exercising due care, the driver of the car recklessly and negligently caused or allowed the horses attached to the car to start, and thereby the said car was suddenly propelled forward, by means whereof the plaintiff was thrown violently from the car upon the street, etc. It is further alleged, in the second count, that the driver, in the absence of the conductor, who had negligently abandoned said car, recklessly and negligently caused or allowed the horses attached to the car to be started forward, and the said car to be suddenly propelled forward, thereby causing the plaintiff to be thrown from the car, etc.

On the trial, testimony was given by plaintiff's witnesses showing that the car was driven rapidly between switches; and the court permitted one of these witnesses, under objection, to answer the following question:

"What did you hear the driver say as to being behind time?
"A. He said he was due at the barn at 18 minutes after 11, and it was 20 minutes after 11 at that time. He wanted to go on, and the conductor said not to go on; to wait until the other car came up."

Counsel for plaintiff claims that this evidence was admis-

sible, and was a significant circumstance indicating the mental attitude of the driver, connected with and tending to explain his negligence, and that it was part of the *res gestæ*. In support of this claim, counsel cites *Matteson v. Railroad Co.*, 62 Barb. 364; *Railway Co. v. Compton*, 75 Tex. 667.

In the first case the action was brought to recover damages for injuries occasioned by defendant's car, upon which plaintiff was a passenger, running off the track where ties were being placed. On the trial the declaration was given in evidence of one who was in charge of a gang of men relaying ties for defendant, "that there was sufficient time to relay them before the arrival of the train." The court held this admissible on the ground that the declarations of an agent, made in reference to the subject-matter of the agency, while engaged in the business, bind the principal.

In the Texas case the minor son of plaintiff was a fireman sent out on a water train on defendant's road. It collided with a passenger train, and the son was killed. Defendant contended that the deceased and the engineer of his train were themselves guilty of negligence, and sought to show a conversation between the engineer of the water train and the operator at one of the stations, in which the engineer was told by the operator that he ought to meet the passenger train at Alvin. The engineer responded: "I am hungry; can't we make Hitchcock?" (a station south of Alvin)—to which the operator said: "No." The accident by which the son was killed occurred south of Alvin. The evidence was excluded. On appeal it was held that it was admissible, as it tended to prove that an order was given to the person in charge of the train to stop at Alvin, and to await the passage of the north-bound passenger train, and that his desire was to hasten forward, and to meet the other train at Hitchcock;

that, therefore, its tendency was to show that the accident was the result of the negligence of the engineer; and that the declarations were a part of the transaction, and hence were not hearsay.

In the present case the hurried driving of the car between switches is not claimed to have caused the injury, and it is not claimed in the declaration that the act of the driver in starting the car was willful, or that the fact that the driver was late caused the accident. This conversation was no part of the *res gestæ*, and had no legitimate tendency to prove that the driver carelessly and negligently started his horses forward, causing the plaintiff to be thrown from the car. The rules exclude all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute. 1 Greenl. Ev. § 52. This testimony might tend to prejudice the driver of the car with the jury. But the jury would have no right to say from it that the driver was in a hurry,—he was late,—and therefore it was quite probable he was negligent, careless, and reckless in starting the horses before the plaintiff had alighted.

The cases cited do not support the claim made in the present case. In the New York case the accident was caused by the failure to relay the ties in time, and that was the very subject under discussion by the section foreman. In the Texas case the reason given by the court in holding the evidence admissible was that it tended to prove that the order to stop at Alvin was given. Just what the mental attitude of this driver was at the time of going between these switches, or at any place on the road aside from where the accident occurred, had no legitimate tendency to prove anything for which the defendant could be held liable in this action.

Plaintiff's counsel, on the trial, having called a witness

to the stand, stated to the court, in the presence of the jury:

"I want to show by this witness what the plaintiff obtained for his services during the time he was here; and I wish to state to the court and jury that the plaintiff, at the time of this accident, was somewhat lame; there was a weakness in his right leg; that it occurred a good many years ago."

This was objected to on the ground that it was not material or competent, when plaintiff's counsel responded:

"I think it is material and competent to show the condition of this man previous to the time of this accident."

The witness answered that plaintiff was a bookkeeper, and that he paid him for his services $65 per month. Witness was then asked:

"Will you state the physical condition of Mr. Gardner at the time just previous to his taking this position here in Detroit?"

This was objected to as incompetent and immaterial, there being no allegation in the declaration of his physical inability, or that defendant had any knowledge of it. The objection was overruled, and witness stated, among other things, that plaintiff's condition was good, except a little lameness that he always had, but that it did not interfere with his proficiency as a bookkeeper. This is assigned as error. We think the court was not in error in admitting this testimony. Plaintiff had a right to show his ability to earn a living, and the amount of his damage by the injury.

The court also permitted the plaintiff, under objection, to show that it had been the custom of the company, except for a few months past, for the conductor to stay with the car the entire length of the line. Plaintiff's counsel then stated to the court that he proposed to show that after the accident the conductors were put back upon

the cars again, to stay with them the entire length of the road.  This was ruled out, the court remarking:

" The reason I admitted the evidence of the custom was that it bore upon the question of the negligence of the conductor in abandoning the car."

The testimony referred to only showed that the defendant company had been accustomed to have conductors on these cars the entire length of the road, except for a short time before the accident.  This would not, of itself, show the duty of the company to keep a conductor upon its car the whole distance at all times.  There could be no such duty unless required by statute or the ordinances of the city, or by the terms of the contract under which the defendant company had the right to exercise its franchises.  Our attention has not been called to such a statute; but plaintiff's counsel offered in evidence, and the court received it under objection, section 12 of the city ordinance of Detroit applying to the Detroit City Railway Company, as follows:

" The grantees or their assigns shall employ careful, sober, and prudent agents, conductors, and drivers to take charge of their cars while on the road."

The declaration does not charge anything but a common-law duty on the carrier's part, and this ordinance was not competent evidence to prove such common-law duty.  The ordinance was not pleaded.  As was said in *Richter v. Harper*, 95 Mich. 221, 227:

" It is true that it was not claimed that the violation of the ordinance was negligence *per se,* but it was claimed that it was evidence which the jury might take into account as to the negligence of the defendants.  The defendants were entitled to notice of this claim,"—citing 1 Dill. Mun. Corp. § 83.

It is clear that the court was in error in admitting the ordinance in evidence, and in allowing the plaintiff to show

the custom of the defendant to have a conductor on the car, as proof of negligence on the part of the defendant in that the conductor stopped off that night.

The other errors assigned relate to the charge of the court and the requests given and refused. Plaintiff asked the court to charge:

"If the car stopped to allow passengers to alight, and while plaintiff, being a passenger, and using reasonable care, was in the act of alighting therefrom, the car was started with a sudden and violent jerk, then the burden is on the defendant to show to the satisfaction of the jury that its driver in charge of the car was not guilty of negligence or want of care in the management of the car."

The court gave this request, and remarked:

"I will give this with this modification: It is incumbent on the plaintiff, and the burden is upon him, to show, in the first place, the negligence of the driver."

It is difficult to understand what the court meant by the statement that it was incumbent on the plaintiff to show the negligence of the driver *in the first place*. It is claimed that the injury was caused by the careless and reckless conduct of the driver in starting up the car before the plaintiff got off, and that the plaintiff himself was in the exercise of due care. The burden was upon the plaintiff to establish both these propositions by competent proof, and the burden was not shifted during the trial. The happening of the accident raised no presumption of negligence, so as to shift the burden of proof. It may be that the driver was careless or negligent in letting the horses start forward, thus jerking the car before the plaintiff stepped down; but the burden was upon the plaintiff to show that the car was jerked or started suddenly forward, and by this means he was injured. It is true that proof of the fact that the car was suddenly started forward would be evidence that the driver was negligent, but that is not shifting the burden of proof;

and an instruction that the burden was on the plaintiff in the first instance might convey an erroneous idea to the minds of the jury. The instruction asked is confessedly erroneous, and the modification did not remove from the minds of the jury the impression thus created. *Bradley v. Railway Co.*, 94 Mich. 38. In *Finn v. Railway Co.*, 86 Mich. 74, it was held that where the plaintiff testified that a street-car did actually move while he was attempting to alight, and that such movement threw him to the ground, causing the injury, the question of the probability or possibility of the movement of the car was for the jury; but there is nothing in the ruling of that case which can be claimed as holding that the burden of proof was upon the defendant at any stage of the case.

For the errors pointed out, the judgment must be reversed, and a new trial ordered.

GRANT and HOOKER, JJ., concurred with LONG, J.

MONTGOMERY, J. I concur in reversing this case on the ground that the court erred in receiving in evidence the city ordinance, the same not having been pleaded.

I also think there was error in the instruction which shifted the burden of proof to the defendant.

McGRATH, C. J., concurred with MONTGOMERY, J.