ROUSTON *v.* DETROIT UNITED RAILWAY.

1. EVIDENCE — DECLARATIONS — ADMISSIBILITY — STATEMENTS OF EMPLOYÉ.

In an action against a carrier for injuries to a passenger on an electric car, declarations by the motorman of the car causing the injury, made several hours before the accident, to the effect that his car was not working well, are inadmissible, being neither res gestæ nor statements upon authority.

2. SAVING QUESTIONS FOR REVIEW—INSTRUCTIONS—OBJECTIONS — LIABILITY OF CARRIER—RES IPSA LOQUITUR.

Whether a collision between electric cars establishes a prima facie case of negligence against a carrier and casts upon it the burden of showing that the appliances were in proper condition and properly managed, as charged by the trial judge, will not be decided where counsel made no objection to the charge and raises no question as to the point in the brief, though the court do not concede it to be the law.

3. CARRIERS—PASSENGERS—CARE REQUIRED.

Carriers of passengers running freight cars only short distances after passenger cars, and up and down steep inclines, are required to exercise a very high degree of care in seeing that their appliances are in proper condition and are properly managed.

4. SAME—DEFECTIVE APPLIANCES—INSPECTION—SUFFICIENCY.

Where inspection is relied upon as a defense to an action against a carrier for personal injuries arising from defective appliances, the inspection should be as thorough as the dangers incident to the business make necessary.

5. SAME—PERSONAL INJURIES—ACTION—EVIDENCE — SUFFICIENCY.

In an action against a carrier for personal injuries caused by a collision between a passenger car and a freight car following it, evidence examined, and *held*, sufficient to go to the jury on the questions of defective brakes on the freight car, inspection thereof by the carrier, and negligent management of the freight car by the motorman.

Error to Oakland; Smith, J. Submitted January 21, 1908. (Docket No. 110.) Decided February 15, 1908.

Case by Grace G. Rouston against the Detroit United Railway for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark* and *James H. Lynch*, for appellant.

*Andrew L. Moore*, for appellee.

Defendant operates an electric railway between Detroit and Pontiac, running through the village of Birmingham. Its passenger cars run on schedule time. It also runs freight cars on no schedule time, but under the direction of the operator located at the village of Royal Oak. The freight cars follow the passenger cars. A rule of the company requires that—

"When two or more cars follow each other in the same direction, they must keep at least one thousand feet apart, except when closing up at meeting points, when extreme caution and good judgment must be exercised to avoid collisions."

The platform of the freight car is above the platform of the street car. Upon approaching the village of Birmingham from Detroit a steep grade commences about 1,100 feet from the power house, located at the foot of the hill. At this power house the tanks of the cars are filled with compressed air to operate the air brakes, and the cars are inspected.

On the night of November 23d, at 11 o'clock, the car known as the theater car left Detroit on its way to Pontiac. Plaintiff was a passenger. The car had reached the power house at Birmingham and was standing still, with its red lights shining from the rear. A freight car loaded with from 12 to 14 tons of freight followed this passenger car. The motorman of the freight car for some reason lost control going down the incline, and his car crashed into the rear of the passenger car with such force that it went nearly two-thirds of the way through the passenger car; the forward trucks of the freight

car were carried back to the hind trucks, and the passenger car was forced ahead a distance of a pole and a half (the distance in feet does not appear). One passenger was killed, and the plaintiff with several others was seriously injured.

Barry, the motorman of the freight car, was an experienced motorman, and had been a long time in the employ of the company. He had run this car for some time. He knew that the passenger car was ahead of him, and expected that it would be standing at the power house at the foot of the hill. He saw its red lights when more than a thousand feet away, and when near the top of the hill or incline he saw by an electric light passengers alighting at a cross-street, a short distance from the power house. The plaintiff made him her own witness. He testified that as he approached Maple street he threw off the current, applied the air brakes and slowed his car; that the brakes worked all right during the day, and he had made three trips between Detroit and Pontiac. As he was crossing Maple street he threw off the brakes and applied the current. He was then going about 15 miles an hour. He ran with the power on until he had reached Middle street. He then cut off his power. It is from Middle street that the descent begins. The descent becomes steeper towards the power house. He testified that he saw the red lights of the passenger car just as he crossed Middle street. His car was supplied with an air brake and a hand brake. He further testified that just after he had passed Middle street he applied the air to his brakes but they failed to respond. Finding that they did not respond, he threw them off and tried them again several times, till he saw that the air brakes would not work; he then seized the hand brake, turned it sufficiently to tighten it some, but decided that he could not stop the car in that way. He then turned to the controller and threw on the reverse. For some reason the reverse failed to work and the car went down the hill with increased velocity. No further attempt was made upon his part to use the

hand brakes, and the car crashed into the passenger car as above stated. He also applied sand to the wheels, but with no appreciable effect.

Plaintiff bases her right of action upon two grounds,— (1) defective brakes, and (2) the negligent management of the car by the motorman. The case was submitted to the jury upon both grounds, and the plaintiff recovered verdict and judgment.

Plaintiff, under objection and exception, introduced the testimony of one Larr, who testified that at Pontiac on the morning before the accident he met Barry, the motorman, in the hotel; that the car had just arrived from Detroit and was late; that he asked Mr. Barry why he was late; that he replied,—"My car has not been working. She has been bucking, and has been for several days;" that witness then asked him why he took the car out, and that Barry replied: "Where you are working for somebody you have got to do as you are told." Witness further testified: "I think he (Barry) said he reported it, or handed in a report that the car was not in working order, and had not been for some time."

Grant, C. J. (after stating the facts). The testimony of the witness Larr was incompetent. It was bare hearsay. It occurred 18 hours before the accident and at a place five miles distant. It was no part of the res gestæ, under the repeated decisions of this court. Dompier v. Lewis, 131 Mich. 144; Hall v. Murdock, 119 Mich. 389; Ablard v. Railway Co., 104 Mich. 147; Gardner v. Railway Co., 99 Mich. 182. See, also, authorities cited in those cases.

One's liability for negligence cannot be established by hearsay admissions of an employé who has no authority to make such admissions and they constitute no part of the res gestæ. The motorman was the plaintiff's own witness, and could have been questioned by her counsel as to the condition of the brakes. Instead thereof, her counsel seek to fasten liability for negligence upon the de-

fendant by showing that the motorman made a statement long prior to the accident, which, if true, would show negligence upon the part of the company if not upon the part of the motorman.

Counsel cite numerous cases in other jurisdictions. I have examined them all. Several of them held the testimony, to which objection was taken, admissible on the ground that it was a part of the res gestæ. Others of the cases are based upon other principles,—such as the case of *Denver, etc., Transit Co.* v. *Dwyer*, 20 Colo. 132, where a conversation between the plaintiff and the engineer was held admissible to show that the engineer knew where the plaintiff was sitting when the accident occurred.

In *Houston, etc., R. Co.* v. *Willie*, 53 Tex. 318, the alleged negligence was in the employment of an incompetent engineer. The declaration of the engineer was held admissible to show want of care on the part of the company in selecting him as engineer, "if supported by other satisfactory evidence."

So, where the defendant through his agent was charged with cutting the slash boards of a dam, and he and his agent were seen going to the mill together,—it was held admissible to prove that the agent declared beforehand that he intended to do it. This was admissible to show that he did the act.

In discussing this question, in *Dompier* v. *Lewis*, supra, this court, through Brother MONTGOMERY, said: "It [the testimony] became a matter of narration, and was not even narration of the incident, but of the cause which led to the accident," and we held that the testimony was properly excluded.

2. The court instructed the jury that the defendant is not an insurer of the safety of its passengers; that it could only be held liable upon proof that the company or some of its employés had been guilty of negligence which was the proximate cause of the accident. He also instructed

them that the collision established a prima. facie cáse of negligence against the company and cast the burden of proof upon the defendant to show that the appliances were in proper condition and were properly managed, and that the injury was the result of an unavoidable and unforeseen accident. Counsel for the defendant took no objection to this instruction, their position being that, upon all the evidence, no negligence was shown. On the contrary, in reply to a question by the court to defendant's counsel upon the trial, asking him if that were a fair statement of the law, counsel replied, "I am not raising any question about that." Neither is any question raised about it in defendant's brief. Counsel for plaintiff cites textbook authorities and decisions in support of the proposition. We are not called upon now to decide the important question. The court has frequently held that proof of an accident is not of itself evidence of negligence, unless accompanied by circumstances from which negligence may legitimately be inferred. It is sufficient to say that the concession of counsel settles the law for this trial, but it must not be understood that we concede it to be the law. We express no opinion upon the question. Plaintiff, however, did not rest her case upon this proposition. She made the motorman of the car her own witness. It appears from his testimony that a day or two before the accident he ran past a station with his car, and the cause of his so doing appeared to be some defect with the brake, and he took his switch bar, went out and fixed it. This question was asked:

"Well, if it had been working all right on that occasion, do you know of any reason why you should have gotten off your car and taken a switch bar and gone back to inspect it?

"A. No, sir. * * *

"Q. Were the brakes on this car in the habit of getting so you had to tighten them up or loosen them up with a switch bar?

"A. Brakes will wear out."

Common carriers of passengers, especially where, as in

this case, they are running freight cars only a short distance after passenger cars, and up and down steep inclines, are required to exercise a very high degree of care in seeing that their appliances are in proper condition and are properly managed. *West Chicago St.-R. Co.* v. *Martin*, 47 Ill. App. 610; 3 Thompson on Negligence, § 3477; *Hamilton* v. *Railway Co.*, 17 Mont. 334, 342; 1 Current Law, pp. 459, 460; 6 Cyc. p. 591; 5 Am. & Eng. Enc. Law (2d Ed.), p. 558.

Upon the first indication of wearing out or of defects of any character, it is their duty to inspect them and see that they are in good condition. In view of this duty and of the testimony of the motorman, we are not prepared to hold, as a matter of law, that there was no evidence of defective brakes to submit to the jury. Defendant introduced evidence showing an inspection of this car before and on the day of the accident, but the record fails to show that it was the usual inspection or one sufficient to determine whether the brake machinery and brakes were in good condition. The inspector testified:

"As applied to the brakes, the inspection made would be simply looking at them. I did not tap the bars and different parts with a hammer to see if there was anything wrong with them. I did not get into the car and start it to test them or anything of that kind."

Failure to inspect is not alleged as a ground of negligence, but the testimony was offered by defendant as a ground of defense, and properly so. When such inspection is relied upon as a defense, it should be as thorough as the dangers incident to the business make necessary.

We held in *Dolph* v. *Railway Co.*, 149 Mich. 278:

"When the railroad has established by reputable and uncontroverted evidence that its appliances were such as good railroading requires, that they were in the condition required by the law, and properly managed, we think the question is one of law for the determination of the court, and not one of fact to be decided by the jury."

We cannot hold that the evidence brings the defendant

within the rule there stated. Neither are we prepared to say that there was no negligence in the management of the car by the motorman. The rules of the company required the motorman to approach stations with great care and caution. The motorman expected that the passenger car preceding him would be at the station; in fact he knew it was there. He saw its lights as he approached within about a thousand feet. The motorman started down this incline at the rate of 15 miles an hour with this heavy car, and shut off his current only as he commenced to go down the incline. We cannot say as a matter of law that it was proper management to start down a steep incline with this load at the rate of 15 miles an hour, knowing that there is a car loaded with passengers at the foot of the incline, and rely upon air brakes to properly check the speed of the car. *Wynne* v. *Railroad Co.*, 35 N. Y. Supp. 1034. Neither can we hold that it was proper management for the motorman to make so many attempts as he testified he did with the air brakes before reversing the current, nor that it was not negligence for him when he found that the reverse did not work, to fail to try the hand brake. All those questions were left to the jury, with the following instruction, as requested by the defendant:

"The law does not require that the motorman should have done precisely that which at this time, I mean now, after full investigation and mature deliberation, the jury may think that he should have done, but if he exercised that care and judgment, and did that in the handling of his car in his efforts to prevent the collision in question which a prudent, careful motorman would have done under the same circumstances, then he was not negligent even though the collision ensued."

Judgment reversed, and new trial ordered.

MONTGOMERY, OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.