## JOHNSON *v.* DESMOND CHEMICAL CO.

1. MASTER AND SERVANT—NEGLIGENCE—ASSUMED RISK—WARN-
   ING AND INSTRUCTING SERVANT—OBVIOUS DANGERS.

   Defendant's negligence in failing to warn plaintiff of the dan-
   ger involved in lifting and moving a heavy car raised on a
   jack, onto the rails of a tramway by using a crowbar, and in
   failing to instruct him of the proper means to avoid the
   same, was a question of fact, where it appeared that plain-
   tiff was working outside his usual employment, and was in-
   experienced, and that an inexperienced man would be likely
   to have used the means employed by him.

2. EVIDENCE—NECESSITY FOR WARNING—PROBABILITY OF DAN-
   GER—OPINION.

   Testimony tending to show that inexperienced men would be
   apt to employ the method employed by plaintiff is relevant
   to show the necessity of instructions and caution.

3. TRIAL— DIRECTING VERDICT— PRESUMPTIONS— PRACTICE— EVI-
DENCE.

   On demurrer to the evidence, all the testimony offered must be
   given the construction most favorable to plaintiff.

4. MASTER AND SERVANT — ASSUMPTION OF RISK — OBVIOUS DAN-
GER.

   The danger of the work done by plaintiff was not, as a matter
   of law, obvious to a man of his experience and intelligence.

5. CONTRIBUTORY NEGLIGENCE — OBVIOUS DANGERS — DIRECTING
VERDICT.

   A servant who is not sufficiently experienced to appreciate the
   danger of his work, is not, as a matter of law, guilty of con-
   tributory negligence for doing it in a dangerous way.

Error to Grand Traverse; Sessions, J., presiding.
Submitted January 20, 1909. (Docket No. 133.) De-
cided May 26, 1909.

Case by Frank W. Johnson against the Desmond
Chemical Company for personal injuries. There was
judgment for defendant on a verdict directed by the
court, and plaintiff brings error. Reversed.

*George C. Brown,* for appellant.

*Parm C. Gilbert,* for appellee.

McALVAY, J. Plaintiff brought this suit against de-
fendant for personal injuries received while in its employ-
ment at its chemical plant, where it manufactures wood
alcohol, acetate of lime, and charcoal. The case has been
before the court upon demurrer to plaintiff's declaration
sustained by the trial court, and reversed by this court,
and a trial ordered. *Johnson* v. *Desmond Chemical
Co.,* 152 Mich. 84. The case is now here upon writ of
error to review a judgment entered upon a verdict in-
structed by the court, against plaintiff.

In the former opinion the facts connected with the in-
jury, and the negligence of defendant as claimed by plain-
tiff and alleged in his declaration, are set forth at length,

and also his claim that on his part he was free from any negligence which contributed to the injury, and reference is had to that opinion for such statements. Upon the trial, at the close of plaintiff's case, on motion of defendant, a verdict was directed in its favor upon the case as made by plaintiff, upon the grounds:

(*a*) That the tools to be used were simple, and the danger obvious. Therefore defendant was not negligent in giving no warning or instructions.

(*b*) That plaintiff's negligence caused the injury.

It is claimed that the court was in error in directing a verdict. The action of the court amounts to sustaining a demurrer to the evidence; the result being that, admitting all of the plaintiff's proofs as true, yet, as a matter of law, the court held that no case had been made. In considering the case, this court must also take all of the testimony on the part of plaintiff as true, and give to the case presented by him its most favorable construction. In this case, then, it is admitted: That plaintiff, an employé of defendant, was taken from his regular employment and ordered to put a derailed tram car back upon the track; that this work was not within the scope of his employment; that he had never before done this work, and was unacquainted with the proper method to perform it, or peculiar dangers attending it; that he was given no instructions how to do the work, or warning of any danger; that in doing this work he was seriously and permanently injured.

At defendant's plant was a car track built upon a trestle which was elevated 18 feet or more, with an incline leading up to a level portion. Upon this track steel tram cars, which had been loaded with wood and subjected to heat in the retorts leaving only the charcoal, were run from the retorts up the incline onto the level, for the purpose of unloading the charcoal through a chute into box cars on the railroad side track beneath. Each of the cars loaded with charcoal weighs about 5,000 pounds. They were

moved up the incline with a horse. The front wheels of the car in question, when nearly up the incline, went off the track on one side, and the hind wheels went off to the other side. The injury occurred to plaintiff while obeying orders to put this derailed car on the track. He had taken a crowbar and a ratchet lifting jack, the usual tools with which to do the work. The car was blocked at the lower end. He had placed the jack under the middle of the west end of the car, and jacked it up high enough, and, it being necessary to move that end of the car a few inches to get these wheels on the track, he placed the crowbar at the side of the car with the point over the rail and pried on it. Immediately the car slipped or dropped down upon the bar in his hands, and plaintiff was jerked forward, and fell over the side of the trestle upon the railroad track below.

Must we assume that plaintiff, under the circumstances, should have known the danger attending this work? The record appears to us to show the contrary. A witness for plaintiff on cross-examination testified, among other things, as follows:

"I was foreman of the Desmond works. The cars occasionally got off the tracks on the ground. It is a frequent occurrence where I work now. The cars at the Desmond works when I worked there had drawheads. We had no jack at the Desmond works then. We have a jack at the Cummer and Diggins plant. We use a jack and place it under the drawhead of the car, then take a crowbar, place it against the drawhead, and shove the car on the track usually. The purpose of the jack is to raise the car high enough so the sills will clear the track. In using the crowbar after the car is raised up it isn't necessary to chuck the crowbar clear under the car, just give it a side push. The purpose of the crowbar is not to lift the car. * * *

"Q. If the car had no drawhead, why wouldn't it be safe to raise the car on the jack and take the lever and push it over by putting the lever at the side of the car, at the end of the car, and pulling it over, provided you are on the ground?

"*A.* Because you will tilt your car on the jack, and the opposite side will strike the rail so you can't shove it over.

"*Q.* You mean to say that, if the car is sufficiently high for the wheels to clear the track over, the opposite side will strike the rails before the car is in position to come down?

"*A.* Yes, sir.

"*Q.* Now, you have tried that?

"*A.* Yes, sir."

And upon redirect examination:

"*Q.* Would an inexperienced man of ordinary prudence be likely to put a bar against the rail on the side of the car in endeavoring to put it back upon the track when it had been lifted upon the jack?

"*The Court:* You may answer the question, although it would be only in view of the cross-examination that it would be proper at all.

"*A.* I think it would be the most likely thing for a green man to do, or an inexperienced man."

This testimony was proper as direct examination on the part of this plaintiff. It tends to show that instructions and cautions were necessary to be given to an inexperienced man put at this work. We cannot say, in view of the facts adduced, as a matter of law, that this work was obviously dangerous to the plaintiff, considering his experience and intelligence.

The facts averred in the declaration, which were held sufficient in law to state a cause of action, are now before us in the form of evidence in the case, not disputed, and of sufficient probative force to require that it be submitted to a jury.

The second reason given by the court for taking the case from the jury, viz., the negligence of plaintiff, was also founded upon the case made by him. It is in fact the logical sequence, of the first conclusion, that no warnings or instructions were necessary. Having already determined that the court was in error in his first conclusion, it follows that the premises upon which he relied were unstable and his second conclusion is necessarily erroneous.

The question of plaintiff's negligence was also a question for the jury.

A consideration of the questions relative to the admission and rejection of evidence is not necessary.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, MONTGOMERY, and MOORE, JJ., concurred.