NIEDZINSKI v. BAY CITY TRACTION & ELECTRIC CO.

1. CARRIERS — STREET RAILWAYS — NEGLIGENCE — OPERATION OF CARS—INFERENCE FROM DERAILMENT.

Negligence being inferable from the derailment of a street car which the evidence tended to show passed over a switch at greater speed than usual, and which might be found to have been derailed by a large stick lying on the track or the collection of mud thereon, visible to the motorman; the question was one of fact.

2. SAME—BURDEN OF PROOF—EVIDENCE.
  It was error to instruct the jury that the burden of proof
    rested on defendant to disprove the *prima facie* case made
    by the plaintiff's evidence of the derailment.

Error to Bay; Collins, J. Submitted February 25,
1910. (Docket No. 29.) Decided March 19, 1910.

Case by Koyanton Niedzinski against the Bay City
Traction & Electric Company for personal injuries. A
judgment for plaintiff is reviewed by defendant on writ of
error. Reversed.

*Weadock & Duffy* (*Harry A. La Berge*, of counsel),
for appellant.

*De Vere Hall* (*E. V. Ingersoll*, of counsel), for appel-
lee.

BLAIR, J. Plaintiff was injured in consequence of the
derailment of one of defendant's cars, and brought this
action to recover damages for the injuries resulting there-
from. There was testimony tending to show that the car
did not slow down when approaching the switch, as re-
quired by the defendant's rule, but ran upon it at its usual
speed on a straight track between streets, and that the
motorman at the time was looking back into the car.
Plaintiff testified:

"The car was going a good deal swifter that time than
what it did before when I was riding on the car. I could
not tell exactly the speed; I couldn't say very fast or
slow; I could not tell anything about it.   *   *   *   The
way I observed in using a car for the last three years
previous; the car was going a little bit swifter than any
other time—that is what I noticed."

The switch in question was a spring switch, which did
not require to be operated for the cars. The defendant's
testimony tended to show that the car was running at the
rate of three or four miles an hour when it struck the
switch, and was under good control; that the brakes and

equipments were in good condition; that the car was properly operated and in good order; that the switch was in good condition, and the track all right, shortly after the accident; that mud on the rail might cause a derailment. The testimony of the conductor and motorman and a photograph indicate that the street was very muddy. The conductor testified:

"It is a rule of the company that when we approach a switch we also slow down the car, so we will strike the switch at a safe rate of speed. We have that rule, so we will go through all right.

"*Q.* Isn't the reason you have that rule so you won't jump a track when you get to the switch?

"*A.* Well, partly; yes, sir. * * *

"*Q.* How fast did you run at an ordinary speed along that Wenona avenue?

"*A.* On that day?

"*Q.* Before that time, and about that time.

"*A.* All along Wenona avenue?

"*Q.* Yes. * * *

"*A.* Oh, sometimes the car ran along without a stop and picked up to 10 miles an hour, but not very often. * * * That morning after the car had left the track there was a small stick or piece of wood lying near the switch. I observed this stick. It appeared to be a root, I should think. A root of a tree about three feet long, a couple of knots in it, some hard timber lying in the mud there; and, after we got the car back in the track, I was anxious to know why we jumped the—. I examined it. It appeared to be a root of a tree about three feet long, and about an inch and a half or two inches in diameter. * * * About midways in it appeared to be scratched, as if it had been run over by the flange of the wheel, or something."

He also testified that the round trip of the car was 5.7 miles and the running time 40 minutes. The wheels and flanges were examined by the company's car repairer later on, but not that morning, and he testified that they were all right. He further testified:

"*Q.* What is the cause of a car going off the track at the switch point like that?

"*A.* I cannot tell. Sometimes a lot of mud on the track throws it off.

"*Q.* It is the mud on the track?

"*A.* Lots of times."

The motorman also testified to seeing the stick or root near the switch, and that the street was muddier than at the time of the photograph.

" I couldn't say how high the tracks are above the level of the road there. The mud was very deep there."

The principal questions are whether—

(1) The court erred in not instructing a verdict for the defendant on the ground that there was no evidence of its negligence.

(2) The court erred in instructing the jury as to the probative force of the derailment.

1. We are not prepared to hold upon this record that the derailment presented the sole evidence of negligence on the part of defendant. The running time of the car, excluding stops, required it to maintain a speed slightly in excess of seven miles an hour. Considering the regular stops and the slowing down for switches, the jury might well have found that the car usually ran, when not slowing down for switches, at least 8 miles an hour; and, if they believed the testimony of plaintiff, it was running faster than that when it struck the switch. According to the testimony of Miss Stachowiak:

" They were going as fast as they would if on a straight line. They did not stop the car any for the switch. * * * In riding on street cars I do not ordinarily pay any attention to how rapidly they move. I do not know how fast it would be in miles an hour.

"*Q.* You do not pay any attention to that when you ride on a street car?

"*A.* Well, of course, I do.

"*Q.* Do you watch the motorman that he does his work, and the conductor that he does his work?

"*A.* I should think I rode in a car long enough to watch them.

"*Q*. Do you pay attention to all those things?

"*A*. Yes, I do.

"*Q*. Do you understand anything about how a car is run?

"*A*. Yes, I do, because I have been riding cars for five years now, since I went in my place.

"*Q*. You mean you ride on the cars a good deal?

"*A*. Yes."

If the jury believed Miss Stachowiak, the car took the switch about twice as fast as the rate at which the conductor and motorman said they usually ran it, and did on that day. Furthermore, the jury might have found that the stick or root was the cause of the derailment, and that if the motorman had been watching the switch instead of looking back into the car, and had been approaching the switch at a safe rate of speed, and had had his car under control, he might have seen the root in time to have stopped the car and to have prevented the accident. Mud also might have been upon the rail, since the proofs do not negative its presence. Considering the testimony in connection with the inference of negligence arising from the derailment, we do not think the court erred in refusing to direct a verdict.

2. The court instructed the jury as follows:

" I also charge you that the burden is upon the plaintiff to prove his case by a preponderance of the evidence, but, plaintiff having shown that the car was derailed, and that he was injured thereby, I charge you that he has made a *prima facie* case, and that, having made a *prima facie* case, the burden of proof is then upon the defendant to show that the derailment was not caused by or through its negligence or the negligence of its employés. In this respect the burden of proof shifts, after the plaintiff has made his *prima facie* case, and the burden is then upon the defendant; or, in other words, the burden of proof being in the first instance upon the plaintiff, if the plaintiff shows, as was shown in this case, that the car was derailed, that makes out a *prima facie* case, and that stands as proved, unless the defendant shows the derailment was not caused by or through its negligence, or the negligence of its employés."

A similar charge was held erroneous in the case of *Sewell* v. *Railway*, 158 Mich. 407 (123 N. W. 2).

We do not think it necessary to discuss the other questions raised, since they will probably not arise upon another trial.

The judgment is reversed, and a new trial granted.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.