## FELSKE v. DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—DERAILMENT — RES IPSA LO- QUITUR.

Evidence that the rear trucks of one of defendant's interurban cars became derailed, and traveled on the edges of the rails for upwards of a block, when the rear of the car swung out into the street and injured plaintiff who was riding in a buggy in the street, does not show negligence of the defend- ant.

2. EVIDENCE—PRECAUTIONS AFTER ACCIDENT.

It was incompetent to show that after the accident defendant stationed a watchman at the point of derailment to direct the movement of cars.

3. DAMAGES—HABITS OF SOBRIETY AND INDUSTRY.

As affecting the question of damages, testimony was admissi- ble to show plaintiff's habits of industry and sobriety.

Error to Wayne; Hosmer, J. Submitted February 27, 1911. (Docket No. 121.) Decided March 31, 1911. Rehearing denied September 29, 1911.

Case by Albert Felske against the Detroit United Railway, for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*Sloman & Sloman* ( *William S. Sayres, Jr.*, of counsel ), for appellee.

BLAIR, J. Plaintiff brought this action to recover damages for injuries caused by the derailment of the rear trucks of one of defendant's suburban cars and the consequent swinging of the car across the street, thereby colliding with the vehicle in which he was riding.

At the place where the accident happened the defendant maintains a double-track street railway. On the day that the accident occurred the plaintiff and two or three other persons were riding in a light wagon. They were proceeding in a westerly direction on Gratiot avenue, on the north side of the street, and driving about midway between the car tracks and the curb. The collision occurred between the intersection of Holcomb and Rohns avenues with Gratiot avenue. Commencing about a block and a half west of this point and extending some distance westward, the south track of the defendant company had been torn up for the purpose of replacement and repair. A temporary track had been constructed upon the south side of the street, in the traveled portion thereof near the curb, for use while the repairs and reconstruction mentioned above were being made. Cars proceeding in an easterly direction—that is, out ₁Gratiot avenue—would therefore travel for some distance upon this temporary track, but when they came to a point about a block and a half away from where the accident happened they would, by means of a crossover, pass over to that part of the permanent

track which had not yet been taken up, and along this track to where the collision took place. On the occasion of the accident, a large suburban double-truck car, which was bound for Mt. Clemens—that is to say, in an easterly direction—while passing from the temporary track onto the permanent track, failed for some reason to properly take the rails, although this fact was not known to anybody at the time. The front truck took the rails in the proper manner, but the rear truck did not. After the car passed from the temporary track to the permanent track, the power was applied to the car, and it speeded up to about the usual traveling speed and proceeded at this rate for about a block or a block and a half, when the rear truck suddenly slewed off to the left, leaving the track.

The court submitted the case to the jury upon the following theory:

"Now I say to you from the fact that the car did leave the track at the junction between this temporary track and the main track, and from the fact that it was propelled along at I know not what rate—its initial rate when it left the temporary track, but at a considerable rate, though not an unlawful rate, had it been on the track at the time of the collision—I say from that fact you may infer negligence on the part of the company. * * * From the circumstance that the evidence is before us which authorizes you to find that the car left the track at the point I have described, and proceeded at a considerable rate until the time of the accident, and that the accident took place at least a block—a good city block in distance therefrom—I say from these facts, gentlemen of the jury, I think you may infer negligence on the part of the defendant, and not from any other testimony which has been offered in this case. If there is a liability, it comes, gentlemen of the jury, from the fact that the company ought to have discovered the condition of the car after it had gone over, and have stopped that car before the accident occurred."

Defendant brings the record to this court for review, grouping his assignments of error in the brief as follows:

166 MICH.—24.

"(1) There is no testimony in the case to support any finding of negligence on the part of the defendant, and the charge of the court in regard thereto was erroneous.

"(2) It was error for the court to permit testimony that after the accident the defendant had a watchman stationed at the crossover.

"(3) It was error for the court to permit testimony as to personal habits and character of the plaintiff.

"(4) There was error justifying the reversal of the judgment in the argument of plaintiff's counsel."

1. The temporary track, as testified by plaintiff's witnesses—

"Was on top of the pavement, about six inches or eight inches above the regular track. * * * I did not inspect what they used as a crossover from the temporary to the permanent track, the same as they usually do. I have seen it so often at night on Gratiot avenue; the crossing there is a part of the rails laid right on top of the others. The track was substantial so far as that is concerned; it was not laid right on the pavement. There were wood ties in between, and then filled in with dirt and gravel. * * * They had a crossover where they used to come from one track to the other. They had one track there and dropped from one to the other. It was a temporary track, I should think. I do not remember how that track was laid. * * *

"Q. Do you know anything about the connection between the temporary track and the permanent track?

"A. No; there was only a rail on top of the other where they dropped off, and that is the way them trucks dropped off; the way I could see by the mark on the pavement."

The crossover rail on top of the permanent rail tapered, as we understand, to the level of the permanent rail.

Plaintiff's witness Watson testified:

"I examined the pavement and could see that it came off the track right where they were repairing it. I saw on the pavement the mark where it was running; the flange of the wheels cutting it right alongside of the track. This groove in the pavement extended from where they were repairing the track up to just this side of my house, where it jumped the track altogether; that is, the hind

trucks. This is a distance of a block, of course; that is a very large block from Holcomb avenue to Belvidere—a very large block on that side of the street. * * * The groove in the pavement which I saw was on the inside of the south rail, between the rails. * * * This small groove in the pavement was between the rails of the south track, and was on the north side of the south rail of the south track. * * * The mark on the pavement that I saw was a small groove in the cedar blocks, just nicking the edge of the blocks. I did not see any marks near the other rails, not until it left the track entirely. This mark that I saw near the right-hand rail of the south track was quite a heavy mark. It had sort of nicked the edges of the blocks near the rail. It was between the rail and the blocks. It kept right alongside of the rail. * * * When the car passed my house, it was going at a pretty fair speed, 10 or 15 miles an hour. Of course, I could not tell exactly. I could not tell whether it was off the track or not by looking at the car, and did not know that before the accident. * * * You see, that is how it ran so smooth. The hind trucks were off the track. The front trucks never were off, not even at the accident. * * * I was about half way between this crossover and the place where the accident happened. When this car passed me, there was nothing at all about it which attracted my attention. * * *

"*Q.* There was nothing unusual about the way the car went by, was there?

"*A.* Nothing at all.

"*Q.* So that you did not have any occasion to watch it, did you?

"*A.* No; I did not have any occasion to watch the car. The first I knew of there being an accident, I saw the car swing around. I happened to be looking in that direction."

There was no testimony that the temporary track, the crossover, or the junction with the permanent track, were improperly constructed, or that the car was operated over them at an excessive rate of speed, or in any wise negligently; neither was there any testimony that there was any defect in the car, or any lack of skill or competency on the part of the operators; and, unless upon the ground

suggested by the circuit judge, there was no evidence upon which to support an inference of negligence, except the derailment of the car, which does not, in the absence of other facts and circumstances tending to show negligence, make a *prima facie* case. *Peppett* v. *Railroad Co.*, 119 Mich. 640 (78 N. W. 900); *Sewell* v. *Railway*, 158 Mich. 407 (123 N. W. 2); *Niedzinski* v. *Electric Co.*, 160 Mich. 517 (125 N. W. 409).

We are also of the opinion that there was no evidence to support the theory upon which the case was submitted. The rails of the permanent track were of the grooved type. The fact that only one flange mark was found, just nicking the edges of the cedar blocks immediately north of the south rail until the rear trucks swung entirely clear of the track, indicates, in the absence of any evidence, that the rails had spread; that while the flanges of the south wheels of the truck had come out of the groove the treads of the wheels were riding on the north side of the groove, and the flanges of the north wheels were riding upon the top of the north rails. This probably explains, in the language of Watson, "how it ran so smooth." The testimony of plaintiff's witness Watson, which is the only testimony on the subject, does not support, but tends to negative, an inference that the running of the car was so unusual that it ought to have attracted the attention of the car men. A verdict based upon this theory would not be supported by any legitimate inference from the facts and circumstances disclosed by the testimony, but would be the result of mere conjecture.

2. The testimony that a watchman was stationed at the crossover after the accident should not have been received. *Moon* v. *Railroad Co.*, 143 Mich. 125 (106 N. W. 715, 108 N. W. 78).

3. Testimony as to the plaintiff's habits of industry, sobriety, etc., was admissible as affecting the amount of the damages suffered. *Shall* v. *Railway Co.*, 152 Mich. 463 (116 N. W. 432).

The other questions discussed in the briefs will probably not arise upon another trial, if one should be had, and we therefore do not consider them.

The judgment is reversed, and a new trial granted.

OSTRANDER, C. J., and MCALVAY, BROOKE, and STONE, JJ., concurred.