## FELSKE *v.* DETROIT UNITED RAILWAY.

STREET RAILWAYS — NEGLIGENT OPERATION OF CAR — HIGHWAYS AND STREETS—DERAILMENT.

> Where the rear trucks of defendant's street car, running on a temporary track, became derailed, and the car swung out into the street injuring plaintiff, upon testimony having a tendency to show that the car ran about a block on the pavement, that its motion and jar was unusual or excessive, that the motorman is usually able to tell from the operation and sound or speed of his car if the rear trucks are off the tracks, a verdict ought not to have been directed for defendant; the question of negligence was one of fact for the jury.

Error to Wayne; Van Zile, J. Submitted November 21, 1912. (Docket No. 167.) Decided December 17, 1912.

Case by Albert Felske against the Detroit United Railway and another for personal injuries. Judgment for defendants upon a directed verdict. Plaintiff brings error. Reversed.

*Sloman & Sloman,* for appellant.

*Brennan, Donnelly & Van De Mark (A. B. Hall,* of counsel), for appellees.

MOORE, C. J. This case has been here before, and was sent back for a new trial. The decision is in 166 Mich. 367 (130 N. W. 676). On the second trial in the circuit court, the circuit judge, after hearing the testimony of witnesses of both parties, directed a verdict in favor of the defendants. The case is brought here by writ of error.

A reference to the opinion when the case was here before will make an extended statement of facts unnecessary. In disposing of the case, Justice BLAIR, in speaking for the court, said in part:

"The testimony of plaintiff's witness Watson, which is the only testimony on the subject, does not support, but tends to negative, an inference that the running of the car was so unusual that it ought to have attracted the attention of the car men. A verdict based upon this theory would not be supported by any legitimate inference from the facts and circumstances disclosed by the testimony, but would be the result of mere conjecture."

Upon the first trial it seemed to be the theory of the plaintiff that negligence might be inferred from the fact that an accident happened. Upon the second trial a number of witnesses were sworn who were not sworn on the first trial. One of the witnesses testified in substance:

"That for a distance, he believes, of about 80 rods immediately preceding the place of the accident, 'it was a rough ride over the pavement;' that he knew the hind trucks were on the wood pavement by the jar of the car inside; that it was different from the movement of the car while it was on the rails before that. There was a marked difference; that the whole car shook; that it was something anybody would have noticed, different from the ordinary running of the car; that it would be like riding on a wagon box over rough roads."

Another witness testified:

"That for a block before the car struck the wagon, she noticed the shaking of the car on the bottom and sides and the rattling of the lamps and windows; that it was rough riding, as if they were going over small stones, or something like that; that before that the ride had been smooth. It shook the lamps and windows so that she took particular notice of it."

A third witness testified:

"That for about a block before the car finally swung around it shook it enough to lift him up; that it was like riding on gravel stones; that it affected his reading of a newspaper, which he had been able to read before; that it made the people in the car at the time look wild—as if an accident was about to happen."

Plaintiff also produced a witness who had been a

motorman in the employ of the Detroit United Railway. He testified in substance:

"The rules of this defendant company required that if anything went wrong, it was the business of the motorman at once to investigate and see what the matter was; that in investigating the first thing he would do 'would be to stop the car and get off, shut off the power, put on the brakes;' that if he felt anything unusual in the jar of his car, it would be necessary to throw on the emergency brakes and reverse the machinery, and his duty to stop the car as soon as possible; and, further, that if he knew his car was off the track, it would be his duty to shut off his power quickly; that a motorman could tell by the sound and feel of the car whether his car was off the track; that he should have no trouble in finding out when the car is off the track; that the construction of these cars is such that in operating the car the electric current first acts upon the motor in the forward truck; and only after the controller reaches a certain point does the current operate on the motor in the rear truck; that a motorman in operating a car of this type should know whether he is getting additional power from his rear trucks; that, if the wheels of the rear truck were off the track, the motor in the rear truck would not work; and, also, that a motorman could tell by the speed of his car whether or not he was getting power from his rear truck; that it would not be good railroading to keep on the power if there was any indication at all that the car was off the track."

This testimony made a very different case from the one presented here before, and required the case to be submitted to the jury under proper instructions. See *Swanson* v. *Power Co.*, 113 Mich. 603 (71 N. W. 1098); *Higgins* v. *Cement Co.*, 152 Mich. 390 (116 N. W. 397); *Johnson* v. *Chemical Co.*, 156 Mich. 669 (121 N. W. 269); *Sheffer* v. *Fleischer*, 158 Mich. 270 (122 N. W. 543); *Schmidt* v. *Mining Co.*, 159 Mich. 308 (123 N. W. 1122); *Goda* v. *Maurer*, 162 Mich. 621 (127 N. W. 799).

Judgment is reversed, and a new trial ordered.

Steere, McAlvay, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.