CONGDON *v.* DETROIT, JACKSON & CHICAGO RAILWAY CO.

1. CARRIERS — NEGLIGENCE — PERSONAL INJURIES — DIRECTED VERDICT.

Upon the trial of an action brought for injuries sustained in a collision between interurban cars of the defendant, evidence that the conductor of the car which caused the accident understood the train dispatcher over the telephone to order the cars to meet at one switch, and that the motor man repeated the order back as the conductor wrote it down, and the train dispatcher who testified that he gave the correct switch understood the motorman to repeat the order as he gave it, presented

a question for the jury as to defendant's negligence. The trial court erred in directing a verdict for plaintiff on the issue of defendant's negligence.

2. SAME—BURDEN OF PROOF—ACCIDENT—NEGLIGENCE.

Where the defendant electric railway company claimed that the accident was unavoidable, that its telephone apparatus was in proper condition and that its employees exercised the high degree of care required of them in dispatching and operating trains, the evidence tended to rebut any inference of negligence, and although the circumstances were such as to justify an inference of negligence, the question was one of fact.

Error to Washtenaw; Kinne, J. Submitted January 20, 1914. (Docket No. 18.) Decided March 26, 1914.

Case by Susan Congdon against the Detroit, Jackson & Chicago Railway for personal injuries. Judgment for plaintiff upon a verdict directed by the court. Defendant brings error. Reversed.

*Cavanaugh & Burke (John W. Bennett,* of counsel), for appellant.

*John P. Kirk,* for appellee.

KUHN, J. The plaintiff was injured in a head-on collision between two cars of the defendant company, in the county of Washtenaw, in this State. The dispatching of the cars was done by telephone. The dispatcher, who had control of the section of the road where the accident occurred, had his office in Ypsilanti. The trains which collided were No. 108, with conductor Balcom and motorman Clark, going west from Ypsilanti, and No. 109, conductor Clark and motorman Hudnut, going east from Jackson. The orders are given to the motorman and conductor of each train by the dispatcher, who writes the order at the time of giving it. The order is first received

by the conductor while in the telephone booth. He writes this message, or train order, as he receives it over the telephone. The motorman then steps into the booth and, reading from the written order, repeats it back to the train dispatcher for the purpose of verification. The dispatcher then says, "Completed," or "Correct," if it is correctly repeated to him, and the motorman then signs the initials of the train dispatcher to the order. These orders are written by the conductor on a machine which makes triplicate orders, one of which is taken out by the conductor and one by the motorman, who retain them till the end of the day's work, when they are forwarded to the office of the supervising dispatcher. The third copy remains in the machine until such time as it is refilled, when the copy is taken out and also sent to the supervising inspector.

On the day of the accident, the crew of train No. 108 were instructed to meet train No. 109 at Fink switch. This order was received and written by conductor Balcom exactly as written by the train dispatcher. Immediately thereafter the train dispatcher gave an order to the crew of train No. 109 at Jackson to meet train No. 108 at Fink switch. Conductor Clark, in taking this order, wrote the word "Bates" instead of "Fink," which is a switch about eight miles eastward from Fink switch. The motorman testified that he read the order to the dispatcher as the conductor had written it; and the dispatcher testified that he heard the motorman read the order to meet train No. 108 at Fink, as he had originally written it. The collision occurred about two miles east of Fink switch and was caused by this confusion in the order.

The plaintiff, in order to establish defendant's negligence, called as witnesses the supervising train dispatcher, the train dispatcher, and the motormen

179 Mich.—12.

of defendant's trains Nos. 108 and 109. The testimony of these witnesses was uncontradicted and showed that the motormen and the dispatchers were competent, experienced, and careful men, who had been employed by the defendant for several years. Defendant called a witness whose testimony tended to show that a confusion and misunderstanding of names sometimes occurred in the transmission of messages over the telephone. The defendant requested the court to direct a verdict in its favor because no negligence had been shown, which was denied. The court directed a verdict in favor of the plaintiff and submitted to the jury merely the question of the amount of damages.

An examination of this record satisfies us that the question of the defendant's negligence should have been submitted to the jury. We think the case is governed by the principles of law announced by this court in the case of *Sewell* v. *Railway*, 158 Mich. 407, 409, 410 (123 N. W. 2), where it was said:

"It is the settled rule of this State that negligence of the defendant must be proved, and that an inference of negligence is not to be drawn from the mere fact of an accident. But it has also been held in numerous cases that the circumstances attending an injury may be such as to justify an inference of negligence. As in the present case, if all that appeared had been that the plaintiff was riding in a car of the defendant under the control of its servants, and the car in which plaintiff was riding continued its course until it collided with another car ahead of it standing still, with sufficient force to push the still car ahead 75 feet, the inference that some one had blundered *prima facie* would be the most natural one to be drawn, and that inference is so clear that it would not require further proof of negligence on the part of the defendant. It is not very important as to whether this be termed a presumption arising from the peculiar facts of the case, or an inference of fact amounting, when not rebutted, to a positive inference

of law. The result would be substantially the same. For cases bearing upon this question, see *Stoody* v. *Railway Co.*, 124 Mich. 420 (83 N. W. 26) ; *Thurston* v. *Railway*, 137 Mich. 231 (100 N. W. 395) ; *Howell* v. *Railway Co.*, 136 Mich. 432 (99 N. W. 406).

"This inference, however, is open to rebuttal; and, if it appears that appliances of the railway company were in proper order and condition, and that the servants of the company did all that a high degree of care and prudence required in the conduct of the business, the plaintiff's case by inference is fully met. *Dolph* v. *Railway Co.*, 149 Mich. 278 (112 N. W. 981) ; *Rouston* v. *Railway*, 151 Mich. 237 (115 N. W. 62).

"It is contended that the present case comes within this rule. We, however, agree with the circuit judge that this was a proper case for a jury, and depends in large part upon the credit given the statements of this witness."

In the instant case, the accident was due to the mistake made by either the dispatcher in giving the order or the crew of train No. 109 in receiving it. As was said in the *Sewell Case*, the "inference that some one had blundered *prima facie* would be the most natural one to be drawn, and that inference is so clear that it would not require further proof of negligence on the part of the defendant." However, it is the claim of the defendant that it was an unavoidable accident; that the telephone apparatus was in proper order and condition; and that its servants exercised the high degree of prudence and care required of them in the dispatching and operating of its trains. This rebuts the inference of negligence, if the testimony of the witnesses satisfies the jury of these facts. See, also, *Niedzinski* v. *Electric Co.*, 160 Mich. 517 (125 N. W. 409) ; *Felske* v. *Railway*, 166 Mich. 367 (130 N. W. 676) ; *Mirabile* v. *Murphy Co.*, 169 Mich. 522 (135 N. W. 299). The court properly denied the motion of the defendant for a directed verdict, but

should have submitted the question of defendant's negligence to the jury.

The judgment is therefore reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.