PATTINSON *v.* COCA-COLA BOTTLING COMPANY OF PORT HURON.

1. NEGLIGENCE—RES IPSA LOQUITUR.
   The doctrine of *res ipsa loquitur* has not been adopted in this State.

2. SAME—RES IPSA LOQUITUR—INFERENCES.
   The fact that the doctrine of *res ipsa loquitur* has not been adopted in this State does not mean that negligence may not be inferred from facts and circumstances surrounding the occurrence in which an injury has been suffered.

3. SAME—CIRCUMSTANTIAL EVIDENCE.
   Negligence may be established by circumstantial evidence.

4. SAME—PRESUMPTIONS.
   Where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in someone.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 38 Am Jur, Negligence § 295 *et seq.*
[1–5] Pleading particular cause of injury as waiver of right to rely on *res ipsa loquitur.* 79 ALR 48, 50.
[5] 22 Am Jur, Food § 103 *et seq.*
[5] Foreign substance in bottled beverage as raising presumption of negligence. 47 ALR 153; 105 ALR 1043.
   Seller's liability for personal injuries to the buyer of food due to its dangerous condition. 13 ALR 1176; 74 ALR 343; 168 ALR 1054.
   Manufacturer's or packer's liability for injury to person of ultimate consumer who purchased from middleman. 17 ALR 688; 39 ALR 995; 63 ALR 343; 88 ALR 530; 105 ALR 1502; 111 ALR 1242; 140 ALR 197; 142 ALR 1491.

5. SAME—SOFT DRINK—EXPLOSION OF BOTTLE—PROXIMATE CAUSE.

Inference by jury that bottle containing a soft drink which had been filled by gravity with 1 ounce of syrup and 5 ounces of carbonated water, the pressure of which was manually controlled, capped, shaken, and inspected, exploded so near plaintiff waitress' hand as to injure her, because of excessive internal pressure *held*, justified, where evidence presented did not show other causes for explosion.

Appeal from St. Clair; George (Fred W.), J. Submitted January 17, 1952. (Docket No. 79, Calendar No. 45,092.) Decided April 7, 1952. Rehearing denied May 16, 1952.

Action by Mildred Pattinson, by her next friend, against Coca-Cola Bottling Company of Port Huron, a Michigan corporation, for injuries sustained when coca-cola bottle exploded. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Telfer, Barr & Telfer,* for plaintiff.

*Walsh, Walsh, O'Sullivan, Stommel & Sharp,* for defendant.

CARR, J. Plaintiff was injured as a result of the breaking of a bottle containing coca-cola. The occurrence took place on October 23, 1947. On that date a special train was operated by the Grand Trunk Western Railway Company ·from Port Huron to Chicago for the accommodation of passengers desiring to attend an International Harvester convention in the latter city. Plaintiff's employer, the Canada Railway News Company, made arrangements for the serving of soft drinks and other refreshments on the train, a converted baggage car being equipped for that purpose. A counter was installed running lengthwise of the car over which the waitresses, including the plaintiff, served refreshments to the cus-

tomers. Beneath the counter was a metal container, divided into 2 sections referred to in the record as "coolers." In these sections were kept bottles of coca-cola which, it is conceded, were purchased from the defendant by whom the product was prepared and bottled. In each section of the container a quantity of chipped and broken ice was placed, the purpose being to maintain the beverage at a temperature suitable for drinking.

On the trial of the case it was the claim of the plaintiff that the ice was in the coolers at the time she boarded the train, and that the bottles of coca-cola were packed therein by the employees of the Canada Railway News Company. She testified further that at about 8:30 in the morning, as the train was approaching the city of Battle Creek, she reached into the cooler for the purpose of taking out a bottle to serve a customer. As she did so, and before she had touched the bottle, it exploded with a "bang." Her right hand was cut by pieces of glass. She was given temporary treatment for the injury and at Battle Creek was removed to a hospital, where first aid was given and a surgical operation performed. Thereafter plaintiff returned to her home in Port Huron.

In her declaration plaintiff averred that it was the duty of the defendant to exercise due and proper care in the bottling of its product, and to regulate the operation in such manner that force or pressure within the bottle would not develop to such a degree as to break or shatter it. It was further averred that defendant negligently failed to observe the duty resting on it, and that the injury to the plaintiff resulted from such negligence. Defendant by its answer denied any lack of due and proper care on its part in the preparation and bottling of the coca-cola.

At the conclusion of plaintiff's proofs, defendant moved for a directed verdict on the ground that no

actionable negligence on its part had been shown and that the facts established by the proofs were insufficient to support an inference of negligence. The motion was taken under advisement under the provisions of CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*). Following the introduction of testimony on behalf of defendant the motion was renewed, decision again reserved, and the case submitted to the jury by which a. verdict in plaintiff's favor in the sum of $1,500 was returned. Thereafter motion for judgment notwithstanding the verdict was made, and denied. Defendant has appealed, claiming that such denial was erroneous. The sole question presented is whether the proofs of the plaintiff were sufficient to permit the submission of the case to the jury.

On behalf of appellant it is insisted that the testimony of plaintiff and her witnesses did not establish facts sufficient to support legitimate inferences of negligence on its part. The claim is emphasized that proof showing the happening of an accident is not enough to permit a finding of actionable negligence. The doctrine of *res ipsa loquitur* has not been adopted in this State. *Rebentisch* v. *Korda,* 331 Mich 656, 661. This does not mean, however, that such an inference may not properly be drawn from facts and circumstances surrounding the occurrence in which an injury has been suffered. In *Burghardt* v. *Detroit United Railway,* 206 Mich 545 (5 ALR 1333), the Court, in reversing a judgment for the defendant entered upon a directed verdict, said:

"This Court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within

the field of legitimate inferences from established facts that at least a *prima facie* case is made. *Alpern* v. *Churchill*, 53 Mich 607; *Barnowsky* v. *Helson*, 89 Mich 523 (15 LRA 33); *La Fernier* v. *Soo River Lighter & Wrecking Co.*, 129 Mich 596; *Stowell* v. *Standard Oil Co.*, 139 Mich 18 (17 Am Neg Rep 569); *Elsey* v. *J. L. Hudson Co.*, 189 Mich 135 (LRA1916B 1284); *O'Donnell* v. *Lange*, 162 Mich 654 (Ann Cas 1912A, 847); *Harris* v. *Royal Oak Savings Bank*, 187 Mich 407; *Sewell* v. *Railway*, 158 Mich 407; *Gerstler* v. *Weinberg*, 160 Mich 267; *Congdon* v. *Railway Co.*, 179 Mich 175; *Bayer* v. *Grocholski*, 196 Mich 325.

"In *Barnowsky* v. *Helson, supra,* it was said:

" 'In this case the falling of the roof was in and of itself some evidence that the work of raising it was not being done with the ordinary care and skill. It is true that the mere fact of any injury does not impute negligence on the part of anyone, but where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in someone. * * *

" 'This roof not properly supported would fall as a natural result of the laws of gravitation, but if properly braced there would be no reason for its falling from that cause, and it would not fall from any other cause without the interposition of the elements or some human agency. Therefore, without any other showing than that it suddenly gave way, slipped or tipped to one side, and fell, the presumption is almost conclusive that it fell because it was not sufficiently braced or stayed.'

"In *Sewell* v. *Railway, supra,* Mr. Justice Montgomery, speaking for the Court, said:

" 'It is the settled rule of this State that negligence of the defendant must be proved, and that an inference of negligence is not to be drawn from the mere fact of an accident. But it has also been held in numerous cases that the circumstances attending an injury may be such as to justify an inference of negligence. As in the present case, if all that ap-

peared had been that the plaintiff was riding in a car of the defendant under the control of its servants, and the car in which plaintiff was riding continued its course until it collided with another car ahead of it standing still, with sufficient force to push the still car ahead 75 feet, the inference that some one had blundered *prima facie* would be the most natural one to be drawn, and that inference is so clear that it would not require further proof of negligence on the part of the defendant.'"

In *Hazen* v. *Rockefeller,* 303 Mich 536, plaintiff, a customs inspector at Sault Ste. Marie, Michigan, was struck and injured by an open door on a car driven by defendant. The record in the case indicated that the door flew open, after the vehicle was started, because not securely closed. The responsibility for such condition was in dispute. After pointing out that negligence could not be presumed, and that the burden of proof was on the plaintiff to establish that defendant was negligent and that such negligence constituted a proximate cause of the accident, it was said:

"There is no direct testimony that defendant opened or closed the car door in question. The conflict between the testimony of defendant and that of plaintiff and Inspector Baker presented a question of fact as to who closed the door. There is testimony from which the trial court, as trier of the facts, could reasonably find that defendant closed the door. From the evidence and the circumstances of the accident a logical and legitimate inference could be drawn that defendant did not properly close the door. Furthermore, a logical and legitimate inference could be drawn that the door swung open and struck plaintiff because defendant had not properly closed it. Such inferences could properly be drawn from the testimony and circumstances of the accident, without resorting to speculation, conjecture, or guess."

See, also, *Ebers* v. *General Chemical Co.*, 310 Mich 261 (17 NCCA NS 660); *Trafamczak* v. *Anys*, 320 Mich 653.

In the case at bar plaintiff's testimony was, in substance, that the bottle exploded as she was about to remove it from the container, and that she was cut by flying pieces of glass. It was her claim that she did not touch the bottle. There is nothing in the record to indicate that any external force whatever was applied to it immediately prior to the breaking. Plaintiff's testimony is corroborated by that of her witness, Mrs. Forro, a fellow employee, who testified in part as follows:

"Mildred had her hand over the bottle, but she wasn't touching the bottle. And there was one round of explosion and the coke bottle blew.

"*Q.* Did you see the bottle blow?

"*A.* I felt the glass hit me. * * * Yes, it blew. Some of the glass hit me, you know, didn't cut me at all, but I felt some of the glass hit me as the bottle blew.

"*Q.* Did you hear any sound?

"*A.* One big bang. * * *

"*Q.* It was a bottle that was standing upright?

"*A.* It was one of the bottles that was standing upright.

"*Q.* You didn't touch the bottle?

"*A.* No, I didn't.

"*Q.* She was reaching before you were there?

"*A.* Yes; she got her hands there before I did.

"*Q.* Did you observe how far her hand was from the bottle?

"*A.* About 3 inches away from the bottle."

Another witness testified that she was working in the car with plaintiff and that about half an hour before the explosion of the bottle that injured plaintiff another bottle exploded as the witness was reaching into the cooler. The witness further testified

that she picked up the pieces of the bottle and laid them on a shelf behind the counter, and that she also, following the occurrence in which plaintiff was injured, picked up the pieces of the second bottle which were also placed on the shelf. The record further indicates that the car was cleaned after the train reached Chicago, and that the broken pieces of the bottles were removed and were not available as evidence at the time of the trial.

Plaintiff also called for cross-examination the superintendent of defendant's plant at Port Huron. He testified as to the method followed in bottling coca-cola, including the cleaning of the bottles, the placing of an ounce of prepared syrup in each bottle, the introduction of 5 ounces of carbonated water, the capping of the bottles, a shaking process to mix the syrup with the carbonated water, and the final loading and storage of the product. The following excerpts from the testimony of this witness indicate the customary procedure:

"We make examinations of the bottles before they are filled with fluid and so forth. That examination is made between the washer and the syruper. A man sits there and looks at the bottles as they pass in front of a fluorescent light. A man is stationed there at all times and the man is changed every half hour. That is all the particular man does for the half hour he is there, is inspect bottles. If the bottle is all right, he doesn't touch it at all. If he observed something, he takes it out. Approximately 55 bottles pass through a minute. That would be roughly 3,000 bottles an hour. Carbonated water is placed in the bottle, but not under pressure—it falls by gravity into the bottle. It is gravity filled bottles. The water is already carbonated. The water contains $CO_2$ gas before it goes into the bottle. The $CO_2$ gas is obtained in the form of dry ice from the Dean Chemical Company of Detroit. We have a carbonator. The gas is saturated with water inside

the carbonator. In a manner of speaking, it is manually controlled. We do not necessarily regulate that gauge from time to time in the bottling process. We have a gauge that regulates the amount of gas that goes into the carbonator, that's manually operated. It is a manually regulated valve. The volumes of $CO_2$ gas that we apply into the carbonating machines varies in accordance with the temperature of the water that we are using. The purpose of using carbonated water in making coca-cola is taste value. We have a filler that fills the bottles and syrup is the extract that we use. We use one ounce of syrup. * * *

"One bottle is filled with syrup at a time. It then passes into the filler. That is the machine where the carbonated water flows into the bottles. It fills 18 bottles at one time. There is a gauge on that machine to show the temperature of the water in the filler and there is a gauge that gives the pressure of the filler. There are 2 gauges—a temperature gauge and a pressure gauge on the head, that is a tank on top of the filler apparatus. There are 18 openings on the machine; it is an 18-valve machine. The one gauge gives the pressure for all 18. * * *

"Q. When the temperature of your water which you use in bottling rises, then you change the pressure gauge as to your carbon dioxide gas?

"A. Yes, if it rises to any extent.

"Q. And that, I believe you already stated, was operated manually or controlled manually?

"A. Yes.

"Q. And what is the range of pressure in the bottled products of coca-cola? In other words, the pressure runs from where?

"A. What we desire in the finished product?

"Q. That is right?

"A. Three point fifty.

"Q. I don't mean the volume of the gas in comparison to the water; I mean the pressure that is contained in the product of the bottle?

"*A.* Well, that depends on the temperature of the water.

"*Q.* Well, doesn't it vary over a certain range, normally?

"*A.* Well, it varies with the seasons, you might say.

"*Q.* I am not referring to the water, but I mean the pressure in your bottles varies in accordance with the temperature of the water, is that correct?

"*A.* Yes, that's right. * * *

"*Q.* When the pressure—Strike that, please. When the temperature of the water varies which you are using in your bottling, say that it varied 5 degrees, then you would change the amount of gas that you are applying so as to maintain that desired ratio of three and a half volumes?

"*A.* Yes, that's right. * * *

"*Q.* And I believe I asked you how many bottles you filled in the normal day's operation, didn't I?

"*A.* Yes, run about 34,000 or 35,000."

It will be noted from the testimony of the witness that the pressure gauge was manually controlled, and that the pressure in the bottles varied in accordance with the temperature of the water. The manner in which the bottles were examined before use was apparently deemed adequate to reveal defects. There is no proof in the case indicating that either of the bottles that exploded was defective. As before noted, the testimony on behalf of plaintiff was inconsistent with any theory that the breaking resulted from some external force. If the bottle that injured plaintiff exploded as claimed, with fragments striking plaintiff and her witness, the inference is justified that the cause was excessive pressure within the bottle, resulting from failure to observe precautions in defendant's operation.

A situation analogous to that involved in the case at bar was presented in *Macres* v. *Coca-Cola Bottling Co., Inc.,* 290 Mich 567. There the plaintiff was in-

jured by the explosion of a bottle containing coca-cola. She had judgment in the trial court, which was affirmed on appeal. It was there contended, as in the case at bar, that the proofs did not justify an inference of negligence on defendant's part, and in substance that recovery could be sustained only by applying the rule of *res ipsa loquitur*. In rejecting the contention, the issues were discussed at length by this Court and prior decisions cited in support of the conclusion that the facts disclosed by the proofs permitted the drawing of legitimate inferences as to defendant's negligence.

Counsel for defendant seek to distinguish the present case from the *Macres Case* principally on the ground that there the pieces of the exploding bottle were preserved, were introduced in evidence on the trial, and indicated a transverse break approximately 2 inches below the cap. There was also testimony that a bottle broken as the result of excessive internal pressure ordinarily fractures in the manner indicated by the exhibit. Such proof tended to substantiate the claim that the bottle exploded because of such pressure. In the case at bar no testimony of the character referred to was introduced, and the proofs do not show the pattern of the bottle fracture. However, the basic question at issue is whether the bottle exploded because of excessive pressure developing in the content as a result of improper carbonation. We think that the evidence that the bottle exploded, throwing the particles of glass toward plaintiff and her witnesses, that no external force of any kind was applied to the bottle from which breaking might have resulted, and that a short time previously another bottle in the same container had exploded under like circumstances, together with the proof as to the process observed in inspecting and filling the bottles and regulating the carbonation of the content thereof, was sufficient to support a

legitimate conclusion as to the cause of the breaking. The testimony of plaintiff and her witnesses, together with the testimony given by defendant's plant superintendent, required submission of the issues in the case to the determination of the jury. The trial court was not in error in denying the motion for judgment notwithstanding the verdict and in entering a judgment in plaintiff's favor.

The judgment is affirmed, with costs to plaintiff.

North, C. J., and Dethmers, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.