# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD SCHWARCK, as Personal
Representative, of the Estate of KAREN
SCHWARCK, deceased,

       Plaintiff-Appellant,

v

ARCTIC CAT INC., a Minnesota Corporation,

       Defendant-Appellee,

and

RENTAL EXPRESS INC.,

       Defendant,

and

T & RC COMPANY d/b/a INDIAN RIVER
SPORTS CENTER,

       Defendant.

UNPUBLISHED
January 14, 2016

No. 322696
Mackinac Circuit Court
LC No. 12-007341-NP

JOSHUA BONNO, as Personal Representative, of
the Estate of EDITH BONNO,

       Plaintiff-Appellant,

v

ARCTIC CAT INC, a Minnesota Corporation,

       Defendant-Appellee,

and

RENTAL EXPRESS INC.,

       Defendant,

No. 325439
Mackinac Circuit Court
LC No. 12-007349-NP

-1-

and

T & RC COMPANY d/b/a INDIAN RIVER
SPORTS CENTER,

                Defendant,

and

DONALD SCHWARCK, as Personal
Representative, of the Estate of KAREN
SCHWARCK, deceased,

                Defendant.

---

Before:  MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiffs, as personal representatives of their respective decedents Schwarck and Bonno, appeal the circuit court order granting defendant Arctic Cat summary disposition under MCR 2.116(C)(10).[2]  We vacate and remand.

## I.  BACKGROUND

This is a products liability and breach of implied warranty action involving a 2002 Arctic Cat 660 snowmobile and the unfortunate deaths of two sisters, Karen Schwarck and Edith Bonno, on February 7, 2010.  Decedent Schwarck was operating the Arctic Cat near Mackinac Island's Grand Hotel with her sister, decedent Bonno, as passenger.  The sisters met their demise when the Arctic Cat went in reverse, backward through a wooden fence and over the West Bluff of the Island.

The spouses of decedents, as their personal representatives, filed this action against defendant Arctic Cat[3] on January 28, 2013, raising claims of negligent manufacture and

---

[1] *Bonno v Arctic Cat Inc*, unpublished order of the Court of Appeals, entered March 13, 2015 (Docket Nos. 322696 & 325439).

[2] Personal representative for Schwarck appeals as of right.  Personal representative for Bonno appeals by leave granted. *Bonno v Arctic Cat Inc*, unpublished order of the Court of Appeals, entered March 13, 2015 (Docket No. 325439).

[3] Defendants initially also included Rental Express, Inc., and T & RC Company, Inc. d/b/a Indian River Sports Center as sellers of the Arctic Cat to the Schwarks.  According to the Register of Actions, the case against Rental Express, Inc. was dismissed on July 8, 2013, and the case against T & RC Company, Inc. was dismissed on May 5, 2014.  Both plaintiffs' briefs on appeal name only Arctic Cat, Inc. as defendant.

production, gross negligence, and breach of implied warranty.[4]  Plaintiffs alleged that the Arctic Cat 660 was negligently designed, tested, approved, manufactured, and produced without a backup alarm that operated throughout all the reverse travel positions and as a result proximately caused decedents' injuries.  Defendant filed its answer March 21, 2013.  Plaintiffs stipulated to consolidate their cases in the trial court for purposes of discovery.

Defendant filed a motion for summary disposition under MCR 2.116(C)(7) and (10) on March 20, 2014.  Defendant denied the existence of a "silent reverse zone," but argued that even if such a zone existed, it was not a cause of the accident because the alarm was intended as a warning to bystanders and not as an indicator of shift position for operators.  Defendant asserted that there was no malfunction of the vehicle's shift indicator and that the indicator was designed to apprise the operator of the shift position of the craft being steered.  Thus, decedent Schwarck, who knowingly engaged the Arctic Cat into reverse, should have looked to the indicator to ascertain the gear of the craft.  Defendant offered the deposition testimonies of first responders Dennis Bradley (fire chief); Dominic Redman and Kenneth Hardy (police officers); and Sam Barnwell (emergency medical technician) to support its contention that the snowmobile tracks only shown one rearward motion south and that there were multiple explanations for how the accident occurred which made the theory of a defective shift lever hypothetical.

Plaintiffs Schwarck and Bonno filed responses in opposition to defendant's motion for summary disposition, April 3 and April 7, respectively.  Both plaintiffs argued that forensic evidence showed that the shift lever was in the reverse alarm zone when retrieved and therefore indicated that decedent Schwarck had shifted from full reverse to forward.  Plaintiffs stated that decedent Schwarck was in the process of executing a three-point or K-turn.[5]  Plaintiffs offered the opinions of two retained experts, John P. Frackelton, an accident reconstructionist, snowmobile mechanic and district service manager for American Suzuki and American Honda, and Lila F. Laux, a human factors psychologist/engineer.  Donald P. Schwarck, decedent Schwarck's surviving spouse and personal representative, also offered an affidavit in support.

---

[4] The personal representative for decedent Bonno also alleged a Count IV Negligence against the estate of decedent Schwarck.  That count is not a matter for this Court on appeal, however.

[5] The trial court adopted the following steps required to execute a 3-point turn / K-turn, from the report of expert John P. Frackelton:

  1) operator initiates a turn approximately perpendicular to the original heading;
  2) operator stops the vehicle;
  3) operator shifts the vehicle from drive to reverse;
  4) operator moves the vehicle reward [sic] perpendicular to the original heading;
  5) operator stops the vehicle;
  6) operator shifts the transmission from reverse to drive;
  7) operator expects vehicle to move forward;
  8) operator completes turn, heading back 180 degrees toward the original direction of travel.

A hearing on defendant's motion was held on April 11, 2014. The court issued its decision and order in favor of defendant on May 1, 2014. The court was not persuaded that the snowmobile was in a silent reverse mode at the time of the accident and concluded, citing *Skinner v Square D Co*, 445 Mich 153; 516 NW2d 475 (1994), that the mere possibility of an event's occurrence, without more, was not enough to find defendant negligent.

The court denied Schwarck's motion for reconsideration on June 30, 2014, after having found that no palpable error had been shown and that Schwarck's "difference of opinion as to the Court's findings, without greater support than shown, must fail."

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing a motion under this subsection, courts consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented in a light most favorable to the nonmoving party. *Maiden*, 461 Mich at 118.

"In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Once the moving party meets its burden, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.* In meeting its responsive burden, the nonmoving party may not rely on mere allegations in pleadings, and must set forth specific facts showing that disputed material issues of fact exist. *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.*

## III. ANALYSIS

Plaintiffs argue that the trial court erred in finding that plaintiffs failed to meet their burden of going forward with proof that the Arctic Cat 660's reverse alarm was the cause in fact of decedents Schwarck and Bonno's deaths and in granting defendant Arctic Cat summary disposition. We agree. Plaintiffs offered competent evidence from which a jury could reasonably infer that decedent Schwark drove the Arctic Cat in reverse off the West Bluff of Mackinac Island unintentionally, relying on the ineffective reverse alarm. Several genuine questions of material facts exist.

### A. PROXIMATE CAUSATION

In a products liability action, the plaintiff must show that defendant's conduct was a proximate cause of the decedent's injury. *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 401; 571 NW2d 530 (1997). Proximate causation involves both "cause in fact" and "legal cause." *Skinner*, 445 Mich at 162–163. The issue here is one of cause in fact. "Cause in fact" requires a showing that "but for" defendant's action, plaintiff would not have been injured, whereas "legal cause" focuses on foreseeability and whether a defendant should be held legally responsible for such consequences. *Id.* "A plaintiff must adequately establish cause in fact in

order for legal cause or 'proximate cause' to become a relevant issue." *Id*. The plaintiff bears the burden of proof to establish causation, but "is not required to produce evidence that positively eliminates every other potential cause." *Id.* at 159-160. The mere happening of an accident is not evidence of negligence. *Pattinson v Coca-Cola Bottling Co of Port Huron*, 333 Mich 253, 256; 52 NW2d 688 (1952). Nor does the lack of witnesses to an accident prevent a plaintiff from establishing a possible issue of fact for the jury. *Skinner*, 445 Mich at 164. A plaintiff can proceed under several different theories in a products liability action. *Gregory v Cincinnati Inc*, 450 Mich 1, 11; 538 NW2d 325 (1995). The evidence is sufficient when it " 'establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." ' *Id*. Citing *Mulholland v DEC Int'l*, 432 Mich 395, 415; 443 NW2d 340 (1989).

"Cause in fact may be established by circumstantial evidence, but such proof must facilitate reasonable inferences of causation, not mere speculation." *Genna v Jackson*, 286 Mich App 413, 417-418; 781 NW2d 124 (2009) citing *Skinner*, 445 Mich at 164 (quotation marks omitted). A causation theory that is purely speculative "is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Kaminski v Grand Trunk Western R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956) quoting *City of Bessemer v Clowdus*, 261 Ala 388, 394; 74 So 2d 259 (1954). On the other hand, a causation theory is not speculative when it is based on established fact and permits reasonable inferences to be drawn from the evidence. *Skinner*, 445 Mich at 164. It is not "sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory." *Id*.

There is no dispute that on the day of the accident decedent Schwarck was driving the Arctic Cat 660 east on West Bluff Road toward the Grand Hotel and that she attempted to execute a three-point or K-turn to head back west. In order to make the turn decedent Schwarck had to turn left to face north, stop, reverse south, stop, and then complete the turn to drive east. The parties' theories diverge from the point where decedent Schwarck 'reversed south.' Plaintiffs argue that after decedent Schwarck reversed, she stopped a second time and shifted forward, and not hearing the reverse alarm, believed she was in forward, and accelerated. As a result, the craft went in reverse through the fence and off the bluff. Defendant counters that the tracks at the scene only support one rearward motion back through the fence, with no second stop.

The trial court determined that there were no material questions of fact on three issues: 1) the position of the gearshift when the Arctic Cat 660 was recovered; 2) the sequence of events related to decedent Schwark's execution of a three-point turn; and 3) the operability of the reverse alarm. The trial court held that although the Arctic Cat 660 was recovered with the shift gear in the "silent reverse mode," there was no evidence that it was in that same mode at the time of the accident. The court also determined that there was no evidence of a second stop in the snowmobile tracks that would support plaintiffs' sequence of events that decedent Schwark shifted from reverse to forward in an effort to execute a three-point turn. The court lastly held, and it was undisputed, that an inspection of the Arctic Cat post-accident showed the reverse alarm to be operable.

The trial court was correct in its determination that there was no genuine issue of disputed fact as to the position of the gear. The snowmobile was recovered with the gearshift in

the silent reverse zone, but a jury could not infer that the shift lever was in the same position at the time of the accident because of the intervening fall off the bluff. Because of the wooded area beyond the fence, the rocky and branch-covered exterior of the bluff, and the ease with which the gear lever shifted, the trial court was correct in reasoning that the gearshift could have just as likely shifted during the fall off the bluff.

The trial court was incorrect in determining that there was no genuine issue of material fact as to whether the snowmobile tracks supported plaintiffs' sequence of events related to making a three-point turn. The trial court concluded that there was no proof that decedent Schwarck stopped a second time to engage the shift in forward gear. Based on the record, that conclusion is incorrect. While first responders Redman and Hardy testified that from their observations of the snowmobile tracks it appeared as if decedent Schwarck made a left turn north, stopped and then reversed straight south, responder Bradley distinctly remembered seeing evidence of two stops in the tracks. Bradley's observation on the night of the accident was that:

> . . . the tracks were pretty obvious on what happened. I mean, they come up – they – if this was the road (indicating), they come down, and they could have made it – they would have made it all the way around, but there was a sidewalk and a front yard, and rather than do that, they stopped and back up. And then I remember them, like, going ahead and not doing it, and then backup the second time, is how I remember it.

Plaintiffs' expert accepted as fact Bradley's observation of two tracks and explained in his report how the responders' lay witness opinions could differ. Frackleton opined that, "[n]ormal stop-to-forward shifting does not create spin or trenching and does not appear any different than a continuous rearward track. In essence a one stop along the last track, then a re-power in reverse would appear similar to a single non-stop reverse." Frackleton asserted that a second stop is necessary in a three-point turn to shift the gear from reverse to drive. Considering Bradley's testimony of having observed a second stop in the tracks, there is evidence from which a jury may reasonably infer that decedent Schwarck stopped twice to shift gears.

The trial court was correct in its third determination that there was no genuine issue of material fact regarding whether the reverse alarm was "operational." Frackelton inspected the subject Arctic Cat after the accident and reported that the reverse alarm chimed when manually depressed. Defendant agreed with Frackelton's observation. The court's conclusion that the reverse alarm "was working at the time of the accident" does not determine whether its operational process constituted a product defect. Plaintiffs' claim was that the reverse alarm was defective because it did not sound during the entire time the vehicle was in reverse. Plaintiffs' causation theory was that the Arctic Cat's reverse alarm caused decedent Schwarck to be confused about whether she was in forward or reverse gear and that the confusion led to the accident that caused decedents' deaths.

Frackelton inspected the chain case, gearshift, and reverse alarm of an exemplar Arctic Cat. He observed that the shift lever traveled from full reverse to full forward in a distance of four inches. Frackelton's testing revealed that when the lever was shifted all the way down and pressed against the reverse buffer switch, the switch sounded a chime and the snowmobile was in full reverse mode. Frackelton experimented with the lever, shifting it up toward forward gear, an

inch at a time. For the next two inches of shift travel forward, the reverse alarm did not sound, but the snowmobile was still in reverse. Frackelton observed that it was only in the last or fourth inch of shift travel that the snowmobile was in full forward.

From his 200-miles worth of test runs with an exemplar Arctic Cat, Frackelton observed that the transition from full reverse to full forward was smooth and accomplished with little pressure. He opined that an operator could "become accustomed to [the] highly repeatable return performance." On two occasions, however, Frackelton pushed the gearshift forward and the Arctic Cat did not return to forward gear as expected. Frackelton observed that "[t]he shaft had stopped at the shift fork transition point and prevented it from fully seating in the stowed 'drive' position."

While defendant refutes the existence of a silent reverse zone on the Arctic Cat, it does not challenge the efficacy of Frackelton's testing process nor his conclusion that the reverse alarm does not sound through the entire reverse gear. Frackleton's opinion, based upon facts deduced from competent witness testimony and reliable testing, creates a material question of fact as to whether the alarm failed to sound at all times when the gear was in reverse. Defendant argues that the alarm served its' intended purpose which is to notify bystanders and not operators that the snowmobile is in reverse and that it was unreasonable for decedent Schwarck to rely on the alarm to determine the gear of the snowmobile. The fact that the manufacturer's intended purpose for the alarm was to warn third-parties is not dispositive of the issue of whether decedent Schwarck relied on the alarm to determine her gear or whether that reliance was reasonable or a foreseeable misuse of the alarm and snowmobile. Decedent Schwark is assumed to have acted with due care for her own safety. Her widower averred that, based upon his observations, decedent Schwarck had a practice and routine of relying upon the sounding of the alarm as a signal that she was in reverse. Evidence from Frackelton's test runs also demonstrate that despite manual control of the shift lever, the lever could stop just short of the forward position and prevent the snowmobile from going into drive.

Reasonable minds could differ as to whether a reverse alarm that does not sound throughout the reverse trajectory or only operates in a partial manner is defective.

Defendant argues and the circuit court agreed that this case is exactly like *Skinner*, but instead of a "phantom zone" on a switch, there is a "silent reverse zone" on a gearshift. Further, that just as the plaintiff in *Skinner* could not prove the "phantom zone" misled him to think the switch was off and cause him to be electrocuted, here plaintiffs cannot prove that the "silent reverse zone" misled decedent Schwarck to think she was in forward and cause her to accelerate backward off the bluff. We disagree and find plaintiffs' case factually dissimilar from *Skinner*. Recall that in *Skinner*, the Court indicated that the plaintiff could not have been confused about whether the Square D switch was on or off because of the noise of the tumbler. If the switch were on, the tumbler's loud noise would have been heard. Here, the Court may compare the noise of the tumbler to the sound of the reverse alarm. Just as the sound of the tumbler indicated the switch was on, so did the sound of the reverse alarm indicate the snowmobile was in reverse. In other words, when the tumbler could not be heard, the switch was off, and here when the alarm could not be heard, the snowmobile was presumably in forward. While the Court in *Skinner* was not persuaded that the plaintiff was misled by the switch, here a jury could find that but for the alarm, decedent Schwarck would not have been confused about whether she was in

forward or reverse. Defendant's argument, that the operator's manual control of the gearshift dissipates any confusion as to what gear the operator is in, is not dispositive. Frackelton reported that twice during his test runs with an exemplar model, when he shifted forward, "[t]he shaft had stopped at the shift fork transition point and prevented it from fully seating in the stowed 'drive' position." This evidence indicates that manual control of the gearshift would not have eliminated operator confusion because the gearshift has the capacity to stop before it is fully in forward gear.

Legal cause becomes a relevant issue after cause in fact has been established. *Skinner*, 445 Mich at 162–163. Because the trial court determined plaintiffs' failed to present proofs of cause in fact, it did not reach the issue of legal cause. "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct 'may create a risk of harm to the victim, and ... [that] the result of that conduct and intervening causes were foreseeable.' " *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997), quoting *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977). Frackelton's observation was that the reverse alarm failed to operate the entire time the Arctic Cat is in reverse. Testimony from decedent Schwarck's surviving spouse was that decedent Schwarck relied on the reverse alarm to notify her of when she was in reverse. In light of this evidence, it is foreseeable that an operator of the Arctic Cat may rely on the sound of the reverse alarm to indicate when the snowmobile is no longer in reverse and experience unexpected travel backward because the alarm does not sound during the entire reverse gear. It is further foreseeable that unanticipated reverse travel may cause a risk of harm to the operator. A snowmobile is designed to travel over ice and snow. Frackelton's tests regarding speed velocity without aggressive throttle demonstrate how the Arctic Cat can travel almost thirty-feet in just 5.4 seconds. Not only can an operator of the Arctic Cat find him or herself unexpectedly travelling in reverse, but also doing so quickly. Plaintiffs' other expert, Dr. Laux, whose qualification as an expert was not challenged, testified based upon human factors that an operator in decedent Schwarck's situation would be unable to respond to that unexpected stimuli. Dr. Laux opined that

> [u]nexpected sensory stimuli such as those associated with moving in reverse when you expect to be moving forward, low probability that this unexpected stimulus will occur, uncertainty about the stimulus itself, and surprise will all result in longer reaction times.

Dr. Laux added that time is also required for the operator to determine how to respond to the unexpected stimuli, to engage the brake, and for the brake to activate. "Inertia will cause the vehicle to continue to move after the brake is applied." In this case, snow and ice most likely aided in the snowmobile's trajectory as well. From her human factor's experience, Dr. Laux opined that, "older women in particular respond more slowly to unexpected stimuli when operating a vehicle."[6]

A jury could infer that traveling backward when one thought he or she would go forward is an unexpected stimulus. It is also a reasonable inference, from the opinions of both plaintiffs' experts, that it was foreseeable that the operator would be surprised by the rearward motion.

---

[6] Schwarck was 59-years-old at the time of the accident.

Given the evidence, reasonable minds may differ as to whether decedent Schwarck did not or could not correct the snowmobile's rearward direction in the time allotted.

Based on the whole record, there is evidence that warrants submission of this case to a jury to determine whether the reverse alarm was defective and whether that defect caused decedent Schwarck and Bonno's deaths.

### B.  BREACH OF IMPLIED WARRANTY

Both plaintiffs alleged breach of implied warranty in their respective complaints.  Bonno did not mention the warranty issue in response to defendant's motion for summary disposition. Schwark's responsive motion stated the law in regards to implied warranties, but did not make an argument.  The trial court did not address whether an implied warranty was breached.  Both plaintiffs fail to argue the issue on appeal.  We therefore consider the issue unpreserved and abandoned.[7]

Vacated and remanded for proceedings consisted with this opinion.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens

---

[7] The presumption of due care issue was also abandoned by Bonno on appeal, not argued before the trial court, and not addressed by the trial court.  An issue not addressed by the trial court is not preserved for appeal.  *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).  This Court is not obligated to consider unpreserved issues in civil cases.  *Coates v Bastian Bros, Inc*, 276 Mich App 498, 509–510; 741 NW2d 539 (2007).